**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

DOMINIQUE J. BROCK                                                    PLAINTIFF
A/K/A AMERICO J. BROCK

v.                                                 CIVIL ACTION NO. 4:15-CV-P65-JHM

STEPHEN WRIGHT *et al.*                                               DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Dominique J. Brock, a prisoner proceeding *in forma pauperis*, has filed a *pro se*

complaint pursuant to 42 U.S.C. § 1983 (DN 1).  This matter is before the Court for initial

review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*,

114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

For the reasons that follow, the Court will allow the following claims to proceed:

(1) the Eighth Amendment excessive-force claims against Defendants Stammers, Sammuel

Wright, Embry, and Hicks in their individual capacities; (2) the failure-to-protect claim against

Defendants Stammers, Sammuel Wright, and Embry in their individual capacities; (3) the Eighth

Amendment claim for deliberate indifference in placing Plaintiff in the recreation cage with

Defendant Hicks against Defendants Stammers, Sammuel Wright, and Embry in their individual

capacities; (4) the state-law claim for assault and battery; (5) the state-law claim for negligent

hiring/retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the

state-law claim for first-degree assault, Ky. Rev. Stat. Ann § 508.010; (8) the state-law claim for

criminal abuse, Ky. Rev. Stat. Ann. § 508.100; and (9) the state-law claim for second-degree

assault, Ky. Rev. Stat. Ann. § 508.020.  All other claims will be dismissed.

# I.  SUMMARY OF CLAIMS

Plaintiff identifies the following five Defendants in this action:  (1) Stephen Wright, a Lieutenant at Green River Correctional Complex (GRCC); (2) Karren Stammers, a correctional officer at GRCC; (3) Sammuel Wright, a correctional officer at GRCC; (4) Embry,[1] a correctional officer at GRCC; and (5) David Hicks, an inmate at GRCC.  Plaintiff sues Defendants in their official and individual capacities.  As relief, Plaintiff seeks monetary damages, that the "ofc's . . . be discharged by ABA," that his "Medical CO-PAy fee to be PAiD in full," that the "inmate be criminaly Tried," and that the "Ky DOC [Kentucky Department of Corrections] policy be revised."

As background, Plaintiff states that he was housed at the Crittenden County Jail prior to being housed at GRCC.  He states that approximately three months prior to the event about which he complains in the present complaint, his brother was murdered.  Plaintiff represents that the murder, coupled with his diagnoses of "Bipolar schitzophrenia, ADD/ADHD, And depression caused [Plaintiff] to hAve A nervous Break down."  Ultimately, according to Plaintiff, these things led to his transfer to GRCC.

Plaintiff states that on or about June 2, 2014, he was involved in a physical altercation with another inmate.  About this altercation, Plaintiff states that he "[a]lledgedly Attacked A man with hAndcuffs on."  Plaintiff represents that "[a]n incident Report was entered into the system in Late May 2014, in witch [Plaintiff] Allegedly Attacked A member of A 'White Supremisist' gang while this guy wAs secured in hAndcuffs."  According to Plaintiff, because of that physical altercation GRCC policy and procedure required that he be placed in a separate recreation cage, referred to as "Rec. Alone."  Plaintiff states that he "spent 1 day out on 'Rec. Alone.'"

---

[1] Plaintiff states that he does not know the first name of this Defendant.

However, according to Plaintiff, on June 4, 2014, contrary to GRCC policy and procedure, he was "Handcuffed, shackeled And forced into [a] Rec. Cage (Bullpen) with David Hicks . . . And Another guy who Both just so happen to Belong to 'white-supremisist' gang." The events that occurred on this date are the ones about which Plaintiff complains in the present action.  According to Plaintiff, cameras will show that Defendants Wright and Embry had a "[p]ersonal convo with Hicks only minutes prior to throwing [Plaintiff] into BullPen with [Defendant Hicks]."  In another place in the complaint, Plaintiff states that he "observed ofc. Embry And [Defendant] Hicks . . . at hicks' door on A Lower, hAving An 'intence conversation' only minutes prior to the Attack."  Plaintiff states that once placed in the recreation cage with these inmates, Defendant Hicks attacked him "from the Blind-side" and "pummeled" him. Plaintiff states that the attack against him was in retaliation for Plaintiff having been involved in the prior altercation with another inmate who was a member of the same gang as Defendant Hicks.  Plaintiff states that he was forced to fight to keep Defendant Hicks off him; he contends that he only fought with Defendant Hicks in self-defense.  Plaintiff states that he sustained physical injury as a result of the fight.

According to Plaintiff, during the time that Defendant Hicks was attacking him, Defendants Stammers, Sammuel Wright, and Embry were outside the recreation cage attempting to stop the fight by spraying Mace into the recreation cage and by yelling orders to stop.  None of these Defendants, according to Plaintiff, entered the recreation cage in an attempt to stop the fight.  Plaintiff states that these Defendants informed him that institutional policy prohibits correctional officers from entering the recreation cage to intervene in an inmate fight.

According to Plaintiff, after Defendant Hicks "surrendered Ofc's steped into the gates placing [him] The victom into hAndcuffs, And Practicly drug, by Ofc. Embry, from outside

3

Bullpen, to An inside Holding CAge, where [he] waited with hAndcuffs on, under-going several injuries, witch were later photographed And Documented for 3-4 hours streight, still in hAndcuffs." Plaintiff describes the holding cage where he was held as a "strip-cage in SMU [Special Management Unit]." He states that he was held there until he could be seen by the "Adjustment commity, Stephen Wright." According to Plaintiff, Defendants Sammuel Wright and Stephen Wright are "Blood Brother[s]." Plaintiff states that he "wAs convicted And given the MAX Penitly. I Appealed the write-up, And filed An inst. Greivance on the Absolute malice witch contributed to my being Assault . . . ."

Plaintiff alleges that Defendants' actions violated the Eighth Amendment and Fourteenth Amendments of the United States Constitution and "Ky Const. Section 17 Rights." Section 17 of the Kentucky Constitution prohibits "cruel punishment." Plaintiff also asserts violations of "General Assembly Article 5 and 7 rights." The Court is unable to determine what Plaintiff is referring to here. In his complaint, Plaintiff sets out the following thirteen separate claims: (1) excessive force; (2) assault and battery; (3) "False Arrest, imprisonment, Apprehencion"; (4) malicious prosecution; (5) "Malice Within the Institution"; (6) negligent hiring and retention; (7) intentional infliction of emotional distress; (8) "State Law Claim-KRS 508.010"; (9) "State Law Claim-KRS 508.100"; (10) "State Law Claim-KRS 508.020"; (11) malpractice; (12) "Nonfeasance"; and (13) "Deliberate 'Ommition' By a State employee."

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

*A. Federal Claims*

    *1. Official-Capacity Claims*

        *a. Eleventh Amendment Immunity*

Under the Eleventh Amendment to the U.S. Constitution,[2] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment similarly bars the damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3

---

[2]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

(6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).  Thus, the claims against Defendants are barred by Eleventh Amendment immunity.[3]  *See Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("Boone's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."); *McDonald v. Prior*, No. 5:15CV-P6-TBR, 2015 WL 4041476, at *4 (W.D. Ky. July 1, 2015) (finding that the official-capacity claims for damages against two prosecutors were barred by Eleventh Amendment immunity).

Further, the State Defendants sued in their official capacities for monetary damages are not considered "persons" subject to suit under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Thomas v. Noder-Love*, No. 13-2495, 2015 WL 4385284, at *5 (6th Cir. July 17, 2015) ("It is also well-settled that [Eleventh Amendment] . . . immunity applies to claims under § 1983, meaning that states and state officials sued in their official capacity are not considered 'persons' under § 1983 and, therefore, cannot be sued for money damages without the state's consent.").

Accordingly, the official-capacity claims for monetary damages brought against Defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

---

[3] Defendants Stammers, Stephen Wright, Sammuel Wright, and Embry (State Defendants) are employees of the Commonwealth of Kentucky.  Defendant Hicks is not an employee of the Commonwealth of Kentucky.  Even if Defendant Hicks' conduct were determined to be fairly attributable to the Commonwealth of Kentucky, the official-capacity claim for monetary damages against him would be barred.

### b. *Requests for Injunctive Relief*

Plaintiff not only requests monetary damages, but he also seeks injunctive relief. He seeks to have Defendant Hicks criminally prosecuted and for the State Defendants to be "discharged by ABA."

"It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965). The Court does not have the power to direct that criminal charges be filed against anyone as Plaintiff requests. *See Bond v. Thornburgh*, No. 89-6077, 1989 WL 149981, at *1 (6th Cir. Dec. 12, 1989) ("United States attorneys cannot be ordered to prosecute, because the decision is within their discretion."); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972) (finding that the "plaintiff's complaint fails to state a claim upon which relief can be granted in that none of the United States Attorneys can be compelled to investigate or prosecute alleged criminal activity"). To the extent Plaintiff seeks criminal charges be brought against Defendant Hicks, he fails to state a claim upon which relief may be granted.

It is unclear what Plaintiff means by asking that the State Defendants "be discharged by ABA"; however, the Court will construe this to be a request that Defendants be fired from their employment at GRCC. "Clearly, *injunctive* relief may be ordered by the courts when necessary to remedy prison conditions fostering unconstitutional threats of harm to inmates." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (emphasis in original). If Plaintiff proves a constitutional violation, the Court may grant injunctive relief only if Plaintiff shows that "irreparable injury will be suffered unless the injunction issues." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097-98 (11th Cir. 2004). Since Plaintiff is no longer incarcerated at GRCC where the events about which he complained occurred, the injunctive relief he seeks-

firing of the State Defendants-will not have any effect on halting or termination of the

constitutional violations alleged, and is moot. *See Wilson v. Yaklich*, 148 F.3d at 601 ("Wilson's

complaint, however, cannot be read to allege an ongoing constitutional violation by these

defendants because Wilson is no longer incarcerated at Mansfield Correctional Institution, where

the events that form the basis for his allegations in this case took place. Consequently, any claim

for *injunctive* relief against the defendants in their official capacities is also unavailing.")

(emphasis in the original); *Burton v. Lynch*, 664 F. Supp. 2d 349, 357-58 (S.D.N.Y. 2008)

(finding that plaintiff's request that defendants be fired from their jobs was moot since plaintiff

was no longer incarcerated at the institution where defendants were employed and where the

alleged unconstitutional behavior occurred).

For these reasons, the injunctive relief requesting that criminal charges be brought against

Defendant Hicks and that the State Defendants be fired will be dismissed pursuant to 28 U.S.C.

§ 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c. *Request for Declaratory Relief (KDOC Policy Revisions)*

It appears that Plaintiff is challenging the constitutionality of two Kentucky Department

of Corrections (KDOC) policies. He seeks to have these policies revised.

According to Plaintiff, during the time that Defendant Hicks was attacking him,

Defendants Stammers, Samuel Wright, and Embry were outside the recreation cage attempting to

stop the fight by spraying Mace into the recreation cage and by yelling orders to stop. None of

these Defendants, according to Plaintiff, entered the recreation cage in an attempt to stop the

fight. Plaintiff states that these Defendants informed him that institutional policy prohibits

correctional officers from entering the recreation cage to intervene in an inmate fight, and

Plaintiff seeks that this KDOC policy be revised.

9

The Sixth Circuit has determined that "prison guards have no constitutional duty to intervene in an armed assault by an inmate when the intervention would place the guard in danger of physical harm." *Patmon v. Parker*, 3 F. App'x 337, 338-39 (6th Cir. 2001) (citing *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997); *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *see also Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) ("[N]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence."); *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1144-45 (D.N.M. 2012) (acknowledging that "courts have recognized, at least in the context of intervening in altercations between inmates, that no duty to intervene into a constitutional violation arises when a government official would have to place themselves in danger to intervene").

Although unclear, in construing the complaint in the light most favorable to Plaintiff as the Court must, it also appears that Plaintiff is challenging another KDOC policy. He states that after he was removed from the recreation cage, he was given disciplinary time and not allowed to use self-defense to defend against the institutional charges that were brought against him because he was prohibited from doing so by KDOC policy.

There is no constitutionally protected right to self-defense in prison disciplinary proceedings. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994) ("Next, we consider if the right to self-defense is a fundamental constitutional right within the Due Process Clause itself. We conclude that it is not."). The Sixth Circuit has found that there is no constitutional right of self-defense in the criminal-law context. *White v. Arn*, 788 F.2d 338, 347 (6th Cir. 1986) (holding that in criminal cases, there is no constitutional right to self-defense founded in the Eighth, Ninth, or Fourteenth Amendments). "Prison disciplinary proceedings are not part of a

10

criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Given that there is virtually no support for such a judicially created constitutional right [to self-defense] in the criminal law, . . . manufacturing such a right for application in non-criminal, prison disciplinary proceedings is even less justified. This is particularly so where prison authorities daily face an intractable problem of violence within the prison walls." *Rowe v. DeBruyn*, 17 F.3d at 1052.

There being no constitutional right requiring prison guards to intervene in inmate fights and no constitutionally protected right to self-defense in prison disciplinary proceedings, the claims for declaratory relief seeking revision of the KDOC policy prohibiting guards from intervening in fights between inmates and the KDOC policy prohibiting inmates from using self-defense in administrative proceedings will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. *Individual-Capacity Claims*

#### a. *Excessive Force*

In describing this claim, Plaintiff sets forth generally the facts regarding what he alleges occurred on June 4, 2014. It is unclear whether he is alleging an excessive-force claim against Defendants Stammers, Sammuel Wright, Embry and Hicks for the attack by Defendant Hicks in the recreation cage or if Plaintiff is alleging an excessive-force claim against Defendant Embry for the manner in which he removed Plaintiff from the recreation cage. In construing the complaint in the light most favorable to Plaintiff, as the Court must, the Court will construe Plaintiff's complaint as alleging both claims.

Plaintiff brings his excessive-force claims under both the Eighth and Fourteenth Amendments. The Fourteenth Amendment prohibits any State from depriving "any person life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward:  the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  In addressing whether the Fourteenth Amendment would apply to a situation involving the alleged use of excessive force on a prisoner, the Supreme Court stated, "We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  "It would indeed be surprising if, in the context of forceful prison security measures, 'conduct that shocks the conscience' or 'afford[s] brutality the cloak of law,' and so violates the Fourteenth Amendment, were not also punishment 'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind,' in violation of the Eighth [Amendment]." *Id.* (citations omitted).

Plaintiff's Fourteenth Amendment claims are derived from his allegation about being "pummeled" by Defendant Hicks in the recreation cage while Defendants Stammers, Sammuel Wright, and Embry were present and from his allegation of being dragged out of the recreation cage by Defendant Embry.  His claims are bounded by the Eighth Amendment, the "explicit textual source of constitutional protection" in the prison context. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be

12

analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Accordingly, Plaintiff's Fourteenth Amendment excessive-force claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, but Plaintiff's Eighth Amendment excessive-force claims against Defendants Stammers, Sammuel Wright, Embry, and Hicks[4] will continue at this point.

### b. Failure to Protect ("NonFeasance")

Plaintiff alleges a claim for "nonfeasance." This claim appears to be based on Defendants Stammers, Sammuel Wright, and Embry's failure to enter the recreation cage to assist him while he was being attacked by Defendant Hicks. The Court construes this claim as a failure-to-protect claim under the Eighth Amendment since the Eighth Amendment is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation marks and ellipsis omitted). "In order to establish an Eighth Amendment claim for failure to protect, a plaintiff 'must show that he [was] incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.'" *Miller v. Kastelic*, 601 F. App'x 660, 662 (10th Cir. 2015) (quoting *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

Upon consideration, the Court will allow the failure-to-protect claim against Defendants Stammers, Sammuel Wright, and Embry to proceed.

---

[4] Although a § 1983 claim may only be brought against a State actor, because of the allegation that Defendant Hicks was acting on the direction of some of the State Defendants when he allegedly attacked Plaintiff, the Court will allow this claim to continue against Defendant Hicks.

### c. *"False Arrest, Imprisonment, Apprehencion"*

Again, it is unclear what the exact nature of Plaintiff's claim is here. It appears that this claim involves Plaintiff being handcuffed and charged with an institutional infraction after the fight with Defendant Hicks. Plaintiff states that he was "given Ky DOC Disiplinary time (on top of what I had to serve in SMU come that Point), Being denied my 'Federal Law' Right to self-Defence." Plaintiff further states, "Now Ky DOC hAs some kind of Policy, that Prohibits inmates from 'Self-Defence' claims, And This is the very policy I wish to Attack in this here Federal claim." It appears, and the Court so construes, that Plaintiff is challenging both the alleged policy restricting Plaintiff's use of self-defense and the imposition of disciplinary time given to Plaintiff by Defendant Stephen Wright as a result of implementing this policy.

The constitutional challenge to the policy restricting the use of self-defense was addressed earlier in this opinion and will not be repeated here. Thus, the Court will address solely Plaintiff's challenge to the disciplinary time he received.

This claim is barred under the *Heck* doctrine. Under this doctrine:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thereafter, the Supreme Court held that *Heck* and its progeny indicate that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its

14

duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Plaintiff complains about receiving disciplinary time as a result of the fight with Defendant Hicks. The claim Plaintiff makes, if successful, would necessarily demonstrate the invalidity of an internal prison proceeding.

Accordingly, Plaintiff's claim for "False Arrest, Imprisonment, Apprehencion," is barred by the *Heck* doctrine and will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### d. *"Deliberate Ommition"*

In this claim, it appears that Plaintiff is alleging that when Defendants Stammers, Sammuel Wright, and Embry placed Plaintiff in the recreation cage with Defendant Hicks they were deliberately indifferent to the risk that this would subject Plaintiff to serious harm.[5]

The Eighth Amendment requires "prison officials [to] ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Upon consideration, the Court will allow the Eighth Amendment claim for deliberate indifference in placing Plaintiff in the recreation cage with Defendant Hicks to proceed against Defendants Stammers, Sammuel Wright, and Embry.

---

[5] It also appears that Plaintiff may be alleging deliberate indifference on the part of Defendant Stephen Wright when this Defendant failed to recuse himself from involvement in the disciplinary charges against Plaintiff. The claim involving the disciplinary charge has previously been addressed by the Court and will not be addressed further.

15

### e. *Malicious Prosecution (Retaliation and Conspiracy to Retaliate)*

Plaintiff alleges a claim for malicious prosecution.  However, the allegations he includes under this claim involve an alleged conspiracy between Defendants Stammers, Sammuel Wright, and Embry to retaliate against Plaintiff because Plaintiff had attacked a member of a gang to which Defendant Hicks belonged.  Plaintiff contends that the incident with Defendant Hicks was retaliatory.  Thus, the Court will construe this to be a claim for retaliation and conspiracy to retaliate.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff's assertion that Defendants Stammers, Sammuel Wright, and Embry conspired with Defendant Hicks to retaliate against Plaintiff because Plaintiff had attacked a member of a gang to which Defendant Hicks belonged does not state an actionable claim of retaliation or conspiracy since the alleged retaliation did not occur as a result of Plaintiff engaging in protected conduct.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (finding that the plaintiff's offensive comments about a hearing officer were not protected conduct for purposes of retaliation); *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (finding no retaliation when plaintiff failed to allege he "was engaged in constitutionally protected conduct as the precipitating factor for his alleged retaliation").

16

Accordingly, Plaintiff's claim for malicious prosecution which the Court construes as a claim for retaliation and conspiracy to retaliate, will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## B.   State-Law Claims

### 1.   Malice Within Institution

The Court knows of no cause of action for malice within an institution under Kentucky law.

Accordingly, the claim for malice within institution will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2.   Malpractice

Plaintiff alleges what he calls three acts of malpractice.  They are as follows: (1) Defendants Stammers, Sammuel Wright, and Embry's violation of GRCC policy which required that Plaintiff be placed in a recreation cage by himself; (2) removing Plaintiff in handcuffs from the recreation cage and placing him in the segregation cell where he was questioned about the incident; and (3) Defendant Stephen Wright's failure to recuse himself from involvement in the disciplinary action against Plaintiff.

The Court knows of no such malpractice causes of action under Kentucky law.

Accordingly, the malpractice claims will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3.   Remaining Six State-Law Claims

Plaintiff alleges six additional state-law claims.  They are as follows:  (1) assault and battery; (2) negligent hiring/retention; (3) intentional infliction of emotional distress; (4) first-

17

degree assault, Ky. Rev. Stat. Ann § 508.010; (5) criminal abuse, Ky. Rev. Stat. Ann.

§ 508.100; and (6) second-degree assault, Ky. Rev. Stat. Ann. § 508.020.  Upon consideration,

the Court will exercise supplemental jurisdiction over these state-law claims and allow them to

proceed past initial review.

## IV.  ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently

advised,

**IT IS ORDERED** as follows:  (1) the official-capacity claims against Defendants

seeking monetary damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) since they

seek monetary relief from Defendants who are immune from such relief; (2) the injunctive relief

claims requesting that criminal charges be brought against Defendant Hicks and that the State

Defendants be fired are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a

claim upon which relief may be granted; (3) the claims seeking revision of the KDOC policy

prohibiting guards from intervening in fights between inmates and the KDOC policy prohibiting

inmates from using self-defense in administrative proceedings are **DISMISSED** pursuant to

28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (4) the

Fourteenth Amendment excessive-force claims are **DISMISSED** pursuant to 28 U.S.C.

§ 1915A(b)(1) for failure to state a claim upon which relief may be granted; (5) the claim which

Plaintiff describes as a claim for "False Arrest, Imprisonment, Apprehencion" is barred by the

*Heck* doctrine and is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a

claim upon which relief may be granted; (6) the claim for malicious prosecution which the Court

construed as a claim for retaliation and conspiracy to retaliate, is **DISMISSED** pursuant to

28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (7) the

claim for malice within the institution is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and (8) the malpractice claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the following claims shall proceed:  (1) the Eighth Amendment excessive-force claims against Defendants Stammers, Sammuel Wright, Embry, and Hicks in their individual capacities; (2) the failure-to-protect claim against Defendants Stammers, Sammuel Wright, and Embry in their individual capacities; (3) the Eighth Amendment claim for deliberate indifference in placing Plaintiff in the recreation cage with Defendant Hicks against Defendants Stammers, Sammuel Wright, and Embry in their individual capacities; (4) the state-law claim for assault and battery; (5) the state-law claim for negligent hiring/retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the state-law claim for first-degree assault, Ky. Rev. Stat. Ann § 508.010; (8) the state-law claim for criminal abuse, Ky. Rev. Stat. Ann. § 508.100; and (9) the state-law claim for second-degree assault, Ky. Rev. Stat. Ann. § 508.020.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims.  In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:  September 11, 2015

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
Defendant Hicks (as directed in para. 4 of the Scheduling Order and Order Directing Service entered this date)
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel (as directed in para. 1 of the Scheduling Order and Order Directing Service entered this date)
4414.003

19