UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

DOMINIQUE J. BROCK                                                                PLAINTIFF
A/K/A AMERICO J. BROCK

v.                                                              CIVIL ACTION NO. 4:15CV-P65-JHM

STEPHEN WRIGHT *et al.*                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion for summary judgment filed by counsel on behalf of Defendants Stephen Wright, Samuel[1] Wright, Karen Stammers, and Jeff Embry (DN 19). Plaintiff has responded (DN 25) to the motion, to which these Defendants replied (DN 28). For the reasons set forth below, the motion will be denied without prejudice to filing a properly supported motion for summary judgment.

**I. SUMMARY OF CLAIMS**

In his complaint, Plaintiff alleges that on or about June 2, 2014, while incarcerated at the Green River Correctional Complex (GRCC), he was involved in a physical altercation with another inmate. According to Plaintiff, because of that physical altercation GRCC policy and procedure required that he be placed in a separate recreation cage, referred to as "Rec. Alone." Plaintiff states that he "spent 1 day out on 'Rec. Alone.'"

However, according to Plaintiff, on June 4, 2014, contrary to GRCC policy and procedure, he was "Handcuffed, shackeled And forced into [a] Rec. Cage (Bullpen) with David Hicks[2] . . . And Another guy who Both just so happen to Belong to 'white-supremisist' gang." The events that occurred on this date are the ones about which Plaintiff complains in the present

---

[1] Contrary to how Plaintiff spelled his name in the complaint, Defendants, in their motion, spell Samuel with one m rather than two. The Court will use Defendants' spelling herein.
[2] Inmate Hicks is a Defendant in this action.

action. According to Plaintiff, cameras will show that Defendants Wright and Embry had a "[p]ersonal convo with Hicks only minutes prior to throwing [Plaintiff] into BullPen with [Defendant Hicks]." In another place in the complaint, Plaintiff states that he "observed ofc. Embry And [Defendant] Hicks . . . at hicks' door on A Lower, hAving An 'intence conversation' only minutes prior to the Attack." Plaintiff states that once placed in the recreation cage with these inmates, Defendant Hicks attacked him "from the Blind-side" and "pummeled" him. Plaintiff states that the attack against him was in retaliation for Plaintiff having been involved in the prior altercation with another inmate who was a member of the same gang as Defendant Hicks. Plaintiff states that he was forced to fight to keep Defendant Hicks off him; he contends that he only fought with Defendant Hicks in self-defense. Plaintiff states that he sustained physical injury as a result of the fight.

According to Plaintiff, during the time that Defendant Hicks was attacking him, Defendants Stammers, Samuel Wright, and Embry were outside the recreation cage attempting to stop the fight by spraying Mace into the recreation cage and by yelling orders to stop. None of these Defendants, according to Plaintiff, entered the recreation cage in an attempt to stop the fight. Plaintiff states that these Defendants informed him that institutional policy prohibits correctional officers from entering the recreation cage to intervene in an inmate fight.

According to Plaintiff, after Defendant Hicks "surrendered Ofc's steped into the gates placing [him] The victom into hAndcuffs, And Practicly drug, by Ofc. Embry, from outside Bullpen, to An inside Holding CAge, where [he] waited with hAndcuffs on, under-going several injuries, witch were later photographed And Documented for 3-4 hours streight, still in hAndcuffs." Plaintiff describes the holding cage where he was held as a "strip-cage in SMU [Special Management Unit]." He states that he was held there until he could be seen by the

2

"Adjustment commity, Stephen Wright." According to Plaintiff, Defendants Samuel Wright and Stephen Wright are "Blood Brother[s]." Plaintiff states that he "wAs convicted And given the MAX Penitly. I Appealed the write-up, And filed An inst. Greivance on the Absolute malice witch contributed to my being Assault . . . ."

After performing review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to proceed: (1) the Eighth Amendment excessive-force claims against Defendants Stammers, Samuel Wright, Embry, and Hicks in their individual capacities; (2) the failure-to-protect claim against Defendants Stammers, Samuel Wright, and Embry in their individual capacities; (3) the Eighth Amendment claim for deliberate indifference in placing Plaintiff in the recreation cage with Defendant Hicks against Defendants Stammers, Samuel Wright, and Embry in their individual capacities; (4) the state-law claim for assault and battery; (5) the state-law claim for negligent hiring/retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the state-law claim for first-degree assault, Ky. Rev. Stat. Ann. § 508.010; (8) the state-law claim for criminal abuse, Ky. Rev. Stat. Ann. § 508.100; and (9) the state-law claim for second-degree assault, Ky. Rev. Stat. Ann. § 508.020.

## II. SUMMARY OF ARGUMENTS

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the claims against them. Thus, Defendants contend they are entitled to summary judgment as to the federal claims proceeding against them. Defendants further argue that since the state-law claims were not exhausted, Ky. Rev. Stat. Ann. § 454.415 requires that summary judgment be granted in favor of Defendants as to those claims too.

Plaintiff argues that he did file a grievance pursuant to CPP (Corrections Policies and Procedures) 14.6 and that the institutional write-up he received as a result of the event was sent

to the warden; thus, argues Plaintiff, he did exhaust his administrative remedies. Apparently, in the alternative, Plaintiff argues that it is clear he attempted to comply with the exhaustion requirements. He further argues that matters regarding disciplinary reports are considered non-grievable.

In their reply, Defendants argue that Plaintiff never identified Defendants Stammers, Embry, or Stephen Wright as being involved in the incident that Plaintiff grieved. They further argue that the grievance filed by Plaintiff does not allege anything but retaliation. Additionally, Defendants point out that, contrary to Plaintiff's assertion, the disciplinary report was never appealed by Plaintiff.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must meet its burden of showing that there is no genuine dispute by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

4

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

## IV.  ANALYSIS

The Prison Litigation Reform Act (PLRA) is applicable to this case as it applies to suits by prisoners concerning prison conditions. The PLRA states, "No action shall be brought with respect to prison conditions under section 1983 of [42 U.S.C.], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained, "the PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all administrative remedies is mandatory, and the remedies provided need not meet federal standards or be plain, speedy and effective. *Id.* at 524. Even if the relief sought is not available, exhaustion is still required. *Id.*; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[A] prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process[.]"). One purpose of the exhaustion requirement is to give prison officials an opportunity to take corrective action and eliminate the need for a lawsuit. *Porter v. Nussle*, 534 U.S. at 525. Prisoners are no longer required to demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Finally, an inmate's case may be dismissed for failure to exhaust where it is shown that the inmate did not "properly" exhaust. *Woodford v. Ngo*, 548 U.S. at 93-95. To "properly" exhaust means that the inmate "'complete[d] the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Defendants bear the burden of proof on the issue of exhaustion. "'[W]here the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find

other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

According to the affidavit of Mark Jackson, the Grievance Coordinator at GRCC, at all times during Plaintiff's incarceration at GRCC, the institution had an inmate grievance procedure in effect. DN 19-2, p. 1. Jackson further avers that on or about March 12, 2014, Plaintiff received inmate orientation at GRCC, and that at orientation, he received a copy of the institution's grievance and disciplinary policies. DN 19-2, pp. 1, 3.

On June 4, 2014, Plaintiff submitted a grievance related to the incident that occurred on that day and about which he complains in the present action. DN 19-2, pp. 1, 7-8. The grievance submitted by Plaintiff states as follows:

> ON approximately 6-4-2014 at about 9:00-10:30 AM, I was involved iN a physical Altercation with aN other iNmate iN SMU. See Exactly 6 days prior, I was involved iN a physical altercation. I belive the 2Nd Altercation was aN act of RetaliatioN, and I have reasoN to belive that Staff was involved. Sargent Wright was Supervisor in Seg on 6-4-2014. he actually Handcuffed and shackled me, and brought me out side into the Cage with the inmate who retaliated against me. See thing is, due to the 1st physical Altercation, I was suposed to be put oN No CoNtact, aNd placed oN a Single Cage for Recreation. Just as I was a day prior, when Lt. Carry was Supervisor in SMU (ON 6-3-2014). But apperently Lt. Carry was aware of my No contact, But exactly ONe day later, Sergent Wright, who was Supervisor iN SMU (ON 6-4-2014), was uNaware of of this No contact. And evers if the No contact was removed by Authorized Staff, this was doNe too early. ANd as a result, I was retaliated against. I belive this was aN act of foul Play, aNd I do wish to file a staff conflict Against Sergent Wright, to the Warden, Under Cpp 14.6 Section J(1)(a)(9). This caN be proveN by walk camera iN SMU, ALower, and bullpen cameras, ON 6-4-2014, at approximately 9:00-10:30 Am.

DN 19-2, pp. 7-8. The action requested by Plaintiff in his grievance was that he "would like to file a criminal complaint against GRCC AND [he] would like to file a Staff Conflict against a Sergent Wright." DN 19-2, p. 7. According to Mark Jackson, Plaintiff has "filed no other grievances, submitted no requests, and did not speak with any GRCC personnel regarding his allegations regarding any actions of the Defendants or the failure to intervene in the fight by the Defendants on June 4, 2014." DN 19-2, p. 1.

On June 10, 2014, the grievance submitted by Plaintiff was "rejected to it being a Non-Grievable issue per CPP 14.6." DN 19-2, p. 5. The rejection notice further explained as follows:

> The grievance is non-grievable due to the fact that you have received a disciplinary report for this issue. Per CPP 14.6, disciplinary issues have their own appeal process and are non-grievable and will not be processed in compliance with CPP 14.6. Also, in the future when filing grievances you can not ask for staff disciplinary action.

*Id.*

As a result of the altercation between Plaintiff and Defendant Inmate Hicks, Plaintiff received a disciplinary write-up charging him with "Physical action/force against other inmate w/no injury." DN 19-3, p. 1. On June 24, 2014, a hearing was held and Plaintiff was found guilty of the charge. DN 19-3, p. 3. Statements made by Defendants Samuel Wright, Stammers, and Embry about the fight were used as evidence at the hearing. *Id.* Plaintiff's penalty was the forfeiture of 60 days of Good Time. DN 19-3, p. 4. When Plaintiff received a copy of the disciplinary report, he indicated that he wished to appeal the decision. *Id.* On July 15, 2014, the warden reviewed the disciplinary decision and concurred with the adjustment committee's decision. *Id.* The warden's review states that, "Due process appears in order and the decision is supported by evidence. I concur with the Hearing Officer's decision. No appeal received." *Id.*

Defendants state that the applicable Inmate Grievance Procedure, CPP 14.6, allows an inmate to "file a grievance concerning 'any aspect of an inmate's life in prison' related to '[c]orrections policies and procedures,' '[i]nstitutional policies and procedures', and '[p]ersonal action by staff.'" DN 19-1, p. 3 (citing CPP 14.6(II)(B)). They further state that the grievance procedure requires that "'the grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with . . . .'" DN 19-1, p. 4 (quoting CPP 14.6(II)(B)). As to the procedure set forth in the grievance policy, Defendants state that once filed,

> the grievance is to be reviewed by the Grievance Committee who must make a recommended disposition within ten days. If the inmate is not satisfied with the recommended disposition of his grievance, the inmate must appeal the decision to the Warden within three days. If not satisfied with the Warden's disposition, the inmate must appeal the decision to the Commissioner within three days.

*Id.*

Defendants did not attach a copy of the Inmate Grievance Procedure, CPP 14.6, to either their summary judgment motion or their reply to Plaintiff's response. Defendants do refer the Court to a website where the grievance procedure may be found, *see* DN 28, p. 3, fn.1. However, the grievance procedure posted on that website states that its effective date is July 31, 2015. The event about which Plaintiff complains occurred on June 4, 2014. Defendants have failed to provide any documentation to show that the CPP 14.6 to which they refer the Court was in effect in June 2014. Defendants do not include an affidavit describing the Inmate Grievance Procedure in effect in June 2014 or showing that the CPP 14.6 to which they refer was in effect in June 2014. Defendants do not cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

9

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" as required by Rule 56 to support their arguments regarding Plaintiff's failure to exhaust. Fed. R. Civ. P. 56(c)(1).

Thus, Defendants have failed to meet their burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For these reasons, Defendants' motion for summary judgment will be denied. However, the Court will deny the motion without prejudice and give Defendants additional time to file a properly supported motion, if they so choose.

## V. ORDER

For the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 19) is **DENIED** without prejudice to filing a properly supported motion for summary judgment.

**IT IS THEREFORE ORDERED** that within **30 days** of entry of this Memorandum Opinion and Order, Defendants may file a properly supported motion for summary judgment in accordance with Fed. R. Civ. P. 56. In support of their summary judgment motion, Defendants should include both the relevant GRCC grievance procedure and the administrative procedure with respect to disciplinary matters, should the Court determine that the grievance procedure does not apply here. Plaintiff must file a response within **21 days** from service of Defendants' motion. Failure to do so will result in consideration of the motion without benefit of a response from Plaintiff. Defendants may file a reply within **14 days** of service of Plaintiff's response.

Date:

cc:    Plaintiff, *pro se*
        Counsel for Defendants
4414.003