UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**DOMINIQUE J. BROCK**                                                                       **PLAINTIFF**
**A/K/A AMERICO J. BROCK**

**v.**                                           **CIVIL ACTION NO. 4:15CV-P65-JHM**

**STEPHEN WRIGHT** *et al.*                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion for summary judgment filed by counsel on behalf of Defendants Steven[1] Wright, Samuel[2] Wright, Karen Stammers, and Jeff Embry (DN 30). Plaintiff has responded (DN 32) to the motion. Defendants have not replied. For the reasons set forth below, the motion will be granted in part and denied in part.

**I. SUMMARY OF CLAIMS**

In his complaint, Plaintiff alleges that on or about June 2, 2014, while incarcerated at the Green River Correctional Complex (GRCC), he was involved in a physical altercation with another inmate. According to Plaintiff, because of that physical altercation, GRCC policy and procedure required that he be placed in a separate recreation cage, referred to as "Rec. Alone." Plaintiff states that he "spent 1 day out on 'Rec. Alone.'"

However, according to Plaintiff, on June 4, 2014, contrary to GRCC policy and procedure, he was "Handcuffed, shackeled And forced into [a] Rec. Cage (Bullpen) with David Hicks[3] . . . And Another guy who Both just so happen to Belong to 'white-supremisist' gang." The events that occurred on this date are the ones about which Plaintiff complains in the present

---

[1] Contrary to how Plaintiff spelled this name in his complaint, Defendants, in their motion, spell this Steven with a "v" rather than a "ph." The Court will use the spelling provided by Defendants.
[2] Contrary to how Plaintiff spelled this name in the complaint, Defendants, in their motion, spell Samuel with one "m" rather than two. The Court will use Defendants' spelling herein.
[3] Inmate Hicks is a Defendant in this action.

action. According to Plaintiff, cameras will show that Defendants Samuel Wright and Embry had a "[p]ersonal convo with Hicks only minutes prior to throwing [Plaintiff] into BullPen with [Defendant Hicks]." In another place in the complaint, Plaintiff states that he "observed ofc. Embry And [Defendant] Hicks . . . at hicks' door on A Lower, hAving An 'intence conversation' only minutes prior to the Attack." Plaintiff states that once placed in the recreation cage with these inmates, Defendant Hicks attacked him "from the Blind-side" and "pummeled" him. Plaintiff states that the attack against him was in retaliation for Plaintiff having been involved in the altercation two days earlier with another inmate who was a member of the same gang as Defendant Hicks. Plaintiff states that he was forced to fight to keep Defendant Hicks off him; he contends that he only fought with Defendant Hicks in self-defense. Plaintiff states that he sustained physical injuries as a result of the fight.

According to Plaintiff, during the time that Defendant Hicks was attacking him, Defendants Stammers, Samuel Wright, and Embry were outside the recreation cage attempting to stop the fight by spraying Mace into the recreation cage and by yelling orders to stop. None of these Defendants, according to Plaintiff, entered the recreation cage in an attempt to stop the fight. Plaintiff states that these Defendants informed him that institutional policy prohibits correctional officers from entering the recreation cage to intervene in an inmate fight.

According to Plaintiff, after Defendant Hicks "surrendered Ofc's steped into the gates placing [him] The victom into hAndcuffs, And Practicly drug, by Ofc. Embry, from outside Bullpen, to An inside Holding CAge, where [he] waited with hAndcuffs on, under-going several injuries, witch were later photographed And Documented for 3-4 hours streight, still in hAndcuffs." Plaintiff describes the holding cage where he was held as a "strip-cage in SMU [Special Management Unit]." He states that he was held there until he could be seen by the

"Adjustment commity, Stephen Wright." According to Plaintiff, Defendants Samuel Wright and Stephen Wright are "Blood Brother[s]." Plaintiff states that he "wAs convicted And given the MAX Penitly. I Appealed the write-up, And filed An inst. Greivance on the Absolute malice witch contributed to my being Assault . . . ."

After performing review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to proceed: (1) the Eighth Amendment excessive-force claims against Defendants Stammers, Samuel Wright, Embry, and Hicks in their individual capacities; (2) the failure-to-protect claim against Defendants Stammers, Samuel Wright, and Embry in their individual capacities; (3) the Eighth Amendment claim for deliberate indifference in placing Plaintiff in the recreation cage with Defendant Hicks against Defendants Stammers, Samuel Wright, and Embry in their individual capacities; (4) the state-law claim for assault and battery; (5) the state-law claim for negligent hiring/retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the state-law claim for first-degree assault under Ky. Rev. Stat. § 508.010; (8) the state-law claim for criminal abuse under Ky. Rev. Stat. § 508.100; and (9) the state-law claim for second-degree assault under Ky. Rev. Stat. § 508.020.

## II. SUMMARY OF ARGUMENTS

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the claims against them. Thus, Defendants contend that they are entitled to summary judgment as to all the remaining claims proceeding against them.

Plaintiff argues that Defendants already filed a motion for summary judgment which was denied, and they should not be allowed "two bites at the same apple." Plaintiff further argues that he was required to use the disciplinary proceedings in Kentucky Corrections Policies and Procedures (CPP) 15.6, not the grievance procedures in CPP 14.6. Plaintiff states that

[d]isciplinary [p]roceedings have their own course of action when considering exhaustion of admin. [r]emedies." Plaintiff states that the institutional write-up he received as a result of the event was sent to the warden, the final level of review for disciplinary matters. Thus, argues Plaintiff, he did exhaust his administrative remedies. Finally, he states he filed a grievance, but it was rejected as being non-grievable. Plaintiff argues that Defendants should not be able to mislead him.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must meet its burden of showing that there is no genuine dispute by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

## IV.  ANALYSIS

The Prison Litigation Reform Act (PLRA) is applicable to this case as it applies to suits by prisoners concerning prison conditions. The PLRA states, "No action shall be brought with respect to prison conditions under section 1983 of [42 U.S.C.], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all administrative remedies is mandatory, and the remedies provided need not meet federal

standards or be plain, speedy and effective. *Id.* at 524. Even if the relief sought is not available, exhaustion is still required. *Id.*; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[A] prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process[.]"). One purpose of the exhaustion requirement is to give prison officials an opportunity to take corrective action and eliminate the need for a lawsuit. *Porter v. Nussle*, 534 U.S. at 525. Prisoners are no longer required to demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Finally, an inmate's case may be dismissed for failure to exhaust where it is shown that the inmate did not "properly" exhaust. *Woodford v. Ngo*, 548 U.S. at 93-5. To "properly" exhaust means that the inmate "'complete[d] the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Defendants bear the burden of proof on the issue of exhaustion. "'[W]here the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "Summary judgment is appropriate only if

defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

According to the affidavit of Mark Jackson, the Grievance Coordinator at GRCC, at all times during Plaintiff's incarceration at GRCC, the institution had an inmate grievance procedure in effect. DN 30-2, p. 1. Jackson further avers that on March 12, 2014, Plaintiff received inmate orientation at GRCC, and that at orientation, he received a copy of the institution's Grievance Procedure. *Id*. On March 12, 2004, Plaintiff signed the Inmate Orientation Packet form indicating he received a copy of the Grievance Procedure and the GRCC orientation packet. DN 30-2, p. 3.

Defendants state that the applicable Inmate Grievance Procedure, CPP 14.6, allows an inmate to "file a grievance concerning 'any aspect of an inmate's life in prison' related to '[c]orrections policies and procedures,' '[i]nstitutional policies and procedures,' and '[p]ersonal action by staff.'" DN 30-1, p. 3 (citing CPP 14.6(II)(B)). They further state that the grievance procedure requires that "the grievant shall include **all aspects of the issue and identify all individuals** in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with . . . ." DN 30-1, p. 3 (emphasis in original). Defendants attached a copy of the Inmate Grievance Procedure, CPP 14.6, to their motion for summary judgment. DN 30-3.

On June 4, 2014, Plaintiff submitted a grievance related to the incident that occurred on that day and about which he complains in the present action. DN 30-2, pp. 1, 7-8. The grievance submitted by Plaintiff states as follows:

> ON approximately 6-4-2014 at about 9:00-10:30 AM, I was involved iN a physical Altercation with aN other iNmate iN SMU. See Exactly 6 days prior, I was involved iN a physical altercation. I belive the 2Nd Altercation was aN act of RetaliatioN, and I have reasoN to belive that Staff was involved. Sargent Wright

7

> was Supervisor in Seg on 6-4-2014. he actually Handcuffed and shackled me, and brought me out side into the Cage with the inmate who retaliated against me. See thing is, due to the 1st physical Altercation, I was suposed to be put oN No CoNtact, aNd placed oN a Single Cage for Recreation. Just as I was a day prior, when Lt. Carry was Supervisor in SMU (ON 6-3-2014). But apperently Lt. Carry was aware of my No contact, But exactly ONe day later, Sergent Wright, who was Supervisor iN SMU (ON 6-4-2014), was uNaware of of this No contact. And even if the No contact was removed by Authorized Staff, this was doNe too early. ANd as a result, I was retaliated against. I belive this was aN act of foul Play, aNd I do wish to file a staff conflict Against Sergent Wright, to the Warden, Under Cpp 14.6 Section J(1)(a)(9). This caN be proveN by walk camera iN SMU, ALower, and bullpen cameras, ON 6-4-2014, at approximately 9:00-10:30 Am.

DN 30-2, pp. 7-8. The action requested by Plaintiff in his grievance was that he "would like to file a criminal complaint against GRCC AND [he] would like to file a Staff Conflict against a Sergent Wright." DN 30-2, p. 7. According to Grievance Coordinator Jackson, Plaintiff has "filed no other grievances, submitted no requests, and did not speak with any GRCC personnel regarding his allegations regarding any actions of the Defendants or the failure to intervene in the fight by the Defendants on June 4, 2014." DN 30-2, p. 1.

On June 10, 2014, the grievance submitted by Plaintiff was "rejected due to it being a Non-Grievable issue per CPP 14.6." DN 30-2, p. 5. The rejection notice further explained as follows:

> The grievance is non-grievable due to the fact that you have received a disciplinary report for this issue. Per CPP 14.6, disciplinary issues have their own appeal process and are non-grievable and will not be processed in compliance with CPP 14.6. Also, in the future when filing grievances you can not ask for staff disciplinary action.

*Id.*

Defendants state that they believe the rejection of the grievance was improper since it contained only staff conflict complaints. DN 30-1, p. 6, n.11. Further, since the grievance was rejected, they acknowledge that Plaintiff "did not have the ability to further appeal the grievance

8

and therefore complied with the grievance procedure, on the limited issue of the retaliation claim, to the best of his ability." *Id*. Defendants argue since the grievance never identified Defendants Steven Wright, Stammers, and Embry, Plaintiff failed to exhaust his administrative remedies as to these Defendants. As to Defendant Samuel Wright, Defendants argue that since the grievance submitted by Plaintiff failed to raise any concern except the alleged retaliation, a claim that the Court has already dismissed, the proceeding claims against him were never exhausted by Plaintiff.

Plaintiff's argues that because Defendants filed a previous motion for summary judgment they should not be allowed to file a second motion for summary judgment. However, this argument has no merit. Other than stating that they should not be allowed "two bites at the same apple," Plaintiff provides no support for this argument. There is nothing in the Federal Rules of Civil Procedure limiting a party to filing only one motion under Rule 56. Further, the Court entered an Order allowing Defendants to file a properly-supported motion, and they did file this second motion for summary judgment within the time allowed by the Order.

Plaintiff further argues that the issues he raised were non-grievable; thus, he was required to use the disciplinary proceedings in CPP 15.6, not the grievance procedures in CPP 14.6. Further, he argues that even if the issues were grievable, Defendants rejected his grievance, and they should not be allowed to mislead him. The Supreme Court has recognized that prisoners are not obligated to meet the exhaustion requirement where no administrative procedures are available to them. *Jones v. Bock*, 549 U.S. at 217-18. Under the CPP, disciplinary procedures are clearly non-grievable issues. CPP 14.6(II)(C)(4). This is because disciplinary proceedings have their own appellate process that inmates must follow. In the present case, the grievance Plaintiff filed was not intended to grieve the disciplinary proceedings. Thus, as Defendants

concede, Plaintiff's grievance was incorrectly rejected. Defendants further concede that as to the issues contained in the grievance, which they limit to retaliation as to Defendant Samuel Wright, the Court should consider that issue as being exhausted.

It is clear that Plaintiff filed only this one grievance challenging the events of June 4, 2014. The Court will construe this grievance as in compliance with the grievance procedure. "[P]risoners must complete the administrative review process in accordance with the applicable procedural rules-rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal citation and quotation marks omitted). According to the GRCC grievance policies and procedures in effect at the time, a grievance shall "identify all individuals." CPP 14.6(II)(J)(1)(a)(5). "[A] plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009)).

In the present case, the one grievance filed by Plaintiff did not include the names of Defendants Steven Wright, Karen Stammers, and Jeff Embry, as the CPP requires. These Defendants therefore were not given a fair opportunity to address any potential claims against them. Thus, as to these three Defendants, Plaintiff failed to exhaust his administrative remedies, and the motion for summary judgment as to them will be granted.

As to Defendant Samuel Wright, Plaintiff did include his name in the grievance he filed. Defendants argue that Plaintiff failed to exhaust his administrative remedies as to Defendant Samuel Wright because his grievance raised only the issue of retaliation. As to the specificity needed in a grievance, the applicable CPP states as follows:

> (4) A grievance shall pertain to one issue. Separate grievances shall be filed for separate issues and unrelated incidents. A staff conflict grievance may contain more than one incident, but the incidents shall all relate to the staff conflict at issue.
>
> (5) The grievant shall include all aspects of the issue and identify all individuals in the "Brief Statement of the Problem" section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1.

CPP 14.6(II)(J)(1)(a)(4) & (5).

In describing the alleged mistreatment or misconduct, the Sixth Circuit has stated as follows:

> [W]e would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's grievance gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

*Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation omitted). "A grievance must provide notice of the problem at hand . . . ." *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at *5 (E.D. Ky. Jan. 3, 2011) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

For example, the Sixth Circuit addressed the issue of the needed specificity of prisoner complaints in *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). In relevant part in *Siggers*, corrections officials issued prison-mail rejections on September 12, 15, and 29, 2006, and then again on March 9, 2007. *Siggers v. Campbell*, 652 F.3d at 688-89. The prisoner complained that the officials violated his rights by rejecting his incoming mail. *Id.* at 689-90. The district court held that the prisoner's September 16, 2006, grievance was sufficient to exhaust only the claims relating to the September 12, 2006, mail rejection. *Id.* at 690. On appeal, the prisoner argued that the district court erred in holding that he was required to file individual grievances challenging each mail rejection. *Id.* at 691. The prisoner asserted that the September 16, 2006,

11

grievance, which addressed only the September 12, 2006, mail rejection, put the defendants on notice of a continuing violation and was, therefore, sufficient to exhaust claims of harm caused by all subsequent mail rejections. *Id.* at 692. The *Siggers* Court did not agree, explaining as follows:

> [The prisoner] was not suffering from one, continuing harm and government indifference. Rather, the Notices of mail rejection that [the prisoner] identifies are each discrete events, and each Notice involves separate facts and circumstances- and even different policy directives. Furthermore, a grievance on each would have permitted an investigation into the reasons for each rejection, based on the different contents of each rejected piece of mail . . . . We therefore affirm the district court's holding that [the prisoner] failed to exhaust all of []his mail-rejection claims except for that based on the September 12, 2006 Notice.

*Id.* at 693.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218. In the present case, the grievance policy requires that the grievance "include all aspects of the issue . . . ." In Plaintiff's grievance, he stated that Defendant Samuel Wright handcuffed and shackled him and brought him into the recreation cage with another inmate resulting in a physical altercation between the two inmates. Plaintiff stated that he believed that this was an act of retaliation in which members of the staff were involved. He further stated that he wanted to bring a Staff conflict against "Sergent Wright."

Plaintiff did not include anything in his grievance about Defendant Samuel Wright using excessive force against him nor did he include any allegations regarding any action or inaction taken by Defendant Samuel Wright after Plaintiff was in the recreation cage. As to these claims, Plaintiff did not put this Defendant on notice, and this Defendant was not given an opportunity to

resolve these disputes before being brought into Court. Thus, summary judgment will be granted as to the Eighth Amendment excessive-force claim against Defendant Samuel Wright.

Further, as to the proceeding state-law claims of assault and battery, negligent hiring/retention, intentional infliction of emotional distress, first-degree assault, criminal abuse, and second-degree assault, Plaintiff raised none of these in his grievance and did not put any Defendant, including Defendant Samuel Wright, on notice regarding these claims. The exhaustion requirement applies to state-law claims brought in federal court. *Hrynczyn v. Mitchell*, 21 F. App'x 299, 300-01 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Accordingly, summary judgment will be granted as to all the state-law claims.

However, the grievance clearly put Defendant Samuel Wright on notice as to the claims regarding failure-to-protect and deliberate indifference in placing Plaintiff in the recreation cage. Thus, summary judgment will be denied as to these two claims against Defendant Samuel Wright.

### V. ORDER

For the reasons stated above, **IT IS ORDERED** as follows:

(1) Defendants' motion for summary judgment (DN 30) is **GRANTED** as to Defendants Steven Wright, Karen Stammers, and Jeff Embry;

(2) Defendants' motion for summary judgment (DN 30) is **GRANTED** as to the Eighth Amendment excessive-force claim against Defendant Samuel Wright;

(3) Defendants' motion for summary judgment (DN 30) is **GRANTED** as to the proceeding state-law claims of assault and battery, negligent hiring/retention, intentional infliction of emotional distress, first-degree assault, criminal abuse, and second-degree assault. The state-law claims are **DISMISSED** from this action; and

(4)  As to the failure-to-protect and deliberate indifference claims against Defendant Samuel Wright based on placing Plaintiff in the recreation cage, Defendants' motion for summary judgment (DN 30) is **DENIED**.

There being no remaining claims against them, the **Clerk of Court** is **DIRECTED** to terminate Defendants Steven Wright, Karen Stammers, and Jeff Embry from the docket of this case.

Date:

cc:	Plaintiff, *pro se*
	Defendant Hicks
	Counsel of record for Defendants Wrights, Stammers, and Embry
4414.003